Judge Hurwitz and Judge Tallman in the courtroom in Portland. Um, very good to see both of you. I wish I could have been with you last night. Oh, we missed you. I miss you guys. Okay, we're going to take up the cases in the order in which they appear in the docket. We have four cases submitted on the briefs today. Oh, we're going to have our crier. For the first time in 15 months. All right, the United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Sorry, sorry for proceeding over you. We're out of practice. Okay, we have four cases submitted on the briefs today. Hernandez v. Garland, Thompson v. Isagenix, Teodoro v. Smith's Drug Stores, and Peterson v. McCorkill. So we will take up Wade v. Saul. Do we have both counsel? Okay. There we go. All right, um, Mr. Hathaway? Yes, Your Honor. Proceed. It's the matter of Vicki Wade. She applied for benefits on January 13, 2015. She alleged a disability as of March 22, 2014. Her hearing was on September 8, 2017. And the decision was issued on November 21, 2017. She was 44 on the hearing date. She was 41 as of her alleged onset date. She has a 10th grade education. She earned a GED at community college. And her most recent employment was at Walmart as a claims associate. She was fired after an extended leave of absence following her father-in-law's death. She has a history of dealing with PTSD since childhood. She was molested at the age of seven to nine. Counsel? Counsel, we've had access to the record and the decision of the ALJ. So I think we all are familiar with the history of the case. If I can cut to the issue that I think most concerns me in this case, it's the application of our recent decision in Lambert versus Saul to this case. The ALJ discounted your client's subjective descriptions of her condition. And the question in my mind is, was the discounting consistent with the requirements of Lambert? Could you address that? Yeah, please. This is a little curious case because, in fact, the ALJ didn't even discount the testimony of the husband and the plaintiff. But she said that the evidence generally supports the allegations of the claimant and her husband. But in fact, their allegations weren't reflected in the assessed RFC, the residual functional capacity assessment. In defendants brief, they argue, he argues that neither the plaintiff or the husband less mental limitations that conflicted with the RFC assessment. However, the ALJ herself cites the claimant's allegations as including. Counsel, I know you've got limited time. So I really want to want you to focus on this for me. Here's here's the issue for me. And I'll ask the other side the same question. As I read Lambert, it says that if you're going to discount the claimants, put aside the husband for a second, the claimants subjective description of her limitations, you need to do so not simply by saying they conflict with the medical record, but by being specific in why you rejected each contention. And my question is, does the record in this case meet the Lambert standard? Yes, this is a tradition of requiring specificity that goes to Brown and Hunter, goes to Tricler. And in fact, the ALJ didn't identify any specific reasons why the plaintiff was being was being rejected. Didn't the ALJ say that she generously considered Wade's subjective complaints? And I know she's I think she said that. But did she? Well, these are I don't mean it. I'm sorry for jumping in there. And in several parts of the ALJ's decision, she aversed that she considered the factors, she aversed that she considered all the objective evidence, and she aversed that she considered all of plaintiff's subjective complaints. But in fact, in each instance, she did not. She didn't consider in her psychological review technique, the objective findings that are including the MOCA, the Montreal Cognitive Assessment score of 20, that was below the cutoff of 26. She didn't consider the GAF of 54. She didn't consider the PHQ-9 score of 29. She didn't consider Dr. Lambert's five marked objective assessments. So in a PRT, she didn't consider any objective findings. In fact, she said there's insufficient objective findings. Counselor, I'm a little puzzled by your answer because as I read the ALJ opinion, the ALJ basically noted that the depression symptoms, confusion, and agoraphobia improved with treatment. Then she noted that Dr. Laman's report was internally contradictory and conflicted with the opinions of Drs. Boyd and Lundblad as to whether Wade was able to sustain work-related tasks. So I'm puzzled as to why that's not adequate articulation of the basis for her determination. Let me deal with each turn and point. The documented improvement. She doesn't identify any specific evidence that identifies her improvement. And in fact, if we look at the April 22, 2016... Counsel, isn't that reflected in the doctor's treatment notes? Isn't that where that conclusion comes from? I'm looking at the doctor's treatment notes. We're looking at Dr. Plotz who wrote she's improved on phenethazine on April 22, 2016. But in fact, the doctor notes that her PHQ-9 score was still 21, indicative of a severe depression. Counsel, I think the disconnect we're having here is this. Let me try it. You also make a sufficiency of the evidence argument in your briefs. Let's assume that there was sufficient evidence in this record from which the ALJ could have reached the conclusion that she did. What Lambert, why Lambert gives me some trouble is my question is whether or not she sufficiently explained it. Lambert seems to say it's not enough to say I read the whole medical record and it's inconsistent. Here, the ALJ, as Judge Tallman suggested, did something more than that. So for me, the question that I need help on is what she did enough to meet the standards of Lambert. Put aside whether or not she, you know, you said, well, she couldn't reach this conclusion. The evidence was the other way. Let's assume she could have. Did she explain it sufficiently or did she not? What I'm reading is based on the discussion below, the ALJ finds that the relevant medical evidence and other evidence in the case record generally supports the statements by the claimant and the claimant's spouse. So I don't see that the ALJ identified where any of the evidence didn't support the allegations. Instead, the ALJ found that it did, that the ROC reflected her allegations. And then she goes on to a summary. And this is this is really, I think, where Brown and Hunter, Treichler and Lambert all get to, is that we have consistently seen in these overworked ALJ's decisions, a patent dismissal of the claimant's testimony, followed by a recitation of the evidence that doesn't identify with any specificity. And the courts left and defense counsel and plaintiff's counsel left to try to pierce that and infer what the ALJ actually found. And in this case, the ALJ actually found that the medical record generally supports the claimant's statements. The errors in this... Counsel, I don't see how you could say that when she said in discrediting Dr. Layman's opinion that she found it internally contradictory and conflicting with the opinions of Drs. Boyd and Lundblad as to whether Wade was able to sustain work-related tasks. I think the question we're all wrestling with is, what more does the ALJ need to say in order to comply with Lambert? I was addressing plaintiffs, the rejection of plaintiffs specifically. There's a separate argument about whether she could have rejected Dr. Layman. Is that Layman's opinion? But whether or not... Let me just address Dr. Layman's opinion. The internal inconsistency between the ability to handle funds and Dr. Layman's five market findings, his MOCA assessment, and his general conclusion that she cannot sustain even simple activities. Is that inconsistent with her ability to receive a check from the Social Security Administration? The question of whether or not a claimant's able to handle funds usually addresses the incompetency of the adult. Do they have a drug addiction, an alcohol addiction? Are they concerned whether or not they need a payee to make sure that these funds aren't inappropriately used? Managing personal funds is not like investing your money and watching it grow. It's just doing checks, right? It sounds so high lofted, but it's not. Defendant's brief cites Birch. And in Birch, the claimant was actually managing her nephew's funds in addition to her own funds. So it was a little bit more than whether or not she had the general competency to forward her routing number to the Social Security Administration so that they can monthly deposit her check, which is really the question of can she handle funds? I would argue that the internal inconsistency that they did identify in regards to Lambert fell short of the specific and legitimate reasons that are generally called for in the Ninth Circuit to reject an examining physician's testimony. As regards to the rejection of the plaintiff's testimony, was it sufficient that the ALJ, I don't know where the ALJ identified improvement. So the question is, do we have documented improvement? Well, it gets to the question of MSEs. You're going to find these mental status examination notes throughout the record. And what you generally see in this record and other records is that physical examinations for purposes other than addressing her mental complaints will find that she has a normal MSE. Well, sometimes even in a treatment record from a psychiatrist or psychologist, they'll see a normal MSE and then a diagnosis further describing. You're left with the impression that the mental status examined is just a snapshot or a cut and paste from a previous treatment note. And I'll point out that in this case, we do have a disabling global assessment of functioning score of 54. Well, the administration's come out and said, we no longer. I thought the agency had sort of stepped back from relying too heavily on the gap. Yeah, they did, because it's just a snapshot in time. But in turn, rather than rely on the gap, now the agency is heavily relying upon mental status exams, which accompany every single treatment note and really don't even have the same level of indicia of mental impairment as the gap assessment, which included. The ALJ cited Wade's medical records, cited multiple instances in 2016 and 2017 of Wade's depression and anxiety improving with medication, noted that she'd been seeing a psychologist, Dr. Amy Jo Williams, and then noted that she was prescribed forenosine with improved symptoms and that she was going to come off Prozac. I mean, that all seems to support the ALJ's conclusion that with medication she was improving. Well, I turn your attention to the PHQ-9 score that was 21 at the same time as the improving her symptoms. The normal mental status exams that we see later in the record are seen in concert with her going to the emergency department thinking that she's having a cardiological event because of her outrageous anxiety, her extreme anxiety. I don't know if I follow mental status exam as reports of normal affect suggesting that her mental impairments have improved. So is your position that no reasonable adjudicator could find this claimant disabled based on this record? Is that what you're asking the court to do? Because I'm no doctor. I don't know what to do with these numbers. We see them in the record. This is a particularly careless decision. We could argue about standards of review all day long, but ultimately it's a capricious and arbitrary. Yeah, this is, I mean, here. And I know you're way over time, but we've taken you there. So I'll let Judge Wardlaw tell you when to stop. But it seems to me there's two separate issues here, and I'm inclined tentatively to agree with Judge Tallman's observation that this record would allow an ALJ to turn down your client's claim. My question is whether she sufficiently, and this is why I want to focus you on it, because I want to focus the government on it, whether she sufficiently described her reasons not for turning down the claim in general, but for discounting your client's subjective symptom testimony. That's what Lambert is about. So I know the two issues get mixed up with each other, and we can then get into whether that error was harmless or harmful or whatever. But that's been the focus of my questions, and I'm sorry if I haven't been precise enough. That's my concern as well. It's my concern as well. But you know what? I think you're so over time. Why don't we let the government answer, and I'll give you a rebuttal. Great. Thank you, Your Honor. Yeah, let's see that. May it please the court, counsel Lars Nelson on behalf of the Commissioner of Social Security. This court should affirm the administration of the administrative law judge because it is consistent with substantial evidence review and the deference that we give to the ALJs in reviewing these matters. So let me start off with the question I've been asking all along, and I'll ask you to assume some stuff that may or may not be our final conclusion. Let's assume there was substantial evidence in this record from which the ALJ could have reached the conclusion she did. My question is, this look, the description of why Ms. Wade's subjective testimony was So address that for me and tell me why that statement is wrong. Sure. There's two points to that, Your Honor. The first point is the unique aspect of improvement, especially in mental health cases. The best way to describe improvement is to tell the story of the case. There are certainly cases where there are subjective complaints, where the ALJ cites, for example, an activity where one activity discounts can only speak to one specific subjective complaint, whereas improvement in a mental health case is best articulated by telling the story of the case. The second point to distinguish this matter from Lambert and Brown-Hunter is the very unique aspect of this case is that the claimant's subjective complaints were generally consistent with the residual functional capacity assessment. And I would direct this court's attention to the second to the last paragraph of the ALJ's decision on page ER 29. And it's what this court typically refers to as boilerplate, but here the ALJ made some notable distinctions. The ALJ said that her medically determinable impairments could reasonably be expected to cause only some of the alleged limitations. Now, if we look at ER 27 of the ALJ's decision, where the ALJ is directing, considering the findings, the ALJ is very explicit that the evidence for the mental impairments here is simply insufficient to meet this standard. So Brown-Hunter and Lambert were applying a clear and convincing standard because the ALJs in those cases found that the claimant got out of the gate. She met her burden of showing that medical impairments could cause the symptoms. Here, by contrast, the ALJ did not find that she met that initial burden. And that's because this is a very unique case where the ALJ also thought the ALJ was crediting most of her subjective complaints and accommodating them in the residual functional capacity assessment. So I take it you're, if I were to rephrase your answer, tell me if I'm wrong. It's that the ALJ really didn't reject her subjective complaints, but instead determined that those, that she could nonetheless function at the level in the residual capacity determination, even crediting those subjective complaints? Is that your position? Yes, the ALJ, right before that paragraph on ER-29, the last sentence of the third paragraph from the bottom, the ALJ does say that her subjective complaints are generally supported. Now, that doesn't mean specifically, and it's not a statement for limitation. So the ALJ did some interpreting of her subjective complaints there. But I will note that the ALJ also said that the limiting effects of her symptoms are not entirely consistent with the medical record. So, I mean, the ALJ was... Yeah, but that's what Lambert tells us you can't do. Lambert just can't say, well, you're describing symptoms, but I've looked at the medical record and it doesn't seem consistent. You need to identify those portions of the record that support your statement. So that's why, and that's why I'm struggling with this case. I don't, that doesn't mean to be a question or a position. It just means Lambert seems to impose some procedural requirements on the ALJ. Lambert seems to require the ALJ to articulate specifically what aspects of her testimony are inconsistent with what in specific is in the medical record. And to me, that's what the ALJ didn't do here. And I mean, please point out if you can where the ALJ did describe specific aspects of her record. Well, again, it's difficult to do because the claimant just didn't describe specific limitations here. And that's why the ALJ felt that he was... Well, is it specific limitations or, I mean, I mean, she described, I mean, there's ample objective evidence in this record to support her PSTD, for example. And does she, is it her, is it incumbent on the way to then say, and here's why this PSTD prevents me from going outside or I can't get out of bed or, you know, I can't stand or sit for any length of time. Is that, I mean, there's, how did, what is, what are you saying the burden is unweighed at that point? As far as subjective complaints, yes, she does need to articulate limitations. And now you cited can't get out of bed. That's at 90 at the hearing record. Immediately thereafter, she said, in fact, she could push herself to do it. She said she can't leave the house, but then, and that's also at 90 in the record. But then immediately at 90 and 91, she said, well, I could go to the doctor's appointments. I can go to the store. At 95, she talks about going bowling into movies with her nieces and nephews, going to manicures at the mall. If I say at Thanksgiving, I can't eat another bite. And then I accept a piece of pie and eat it. The ALJ and you would understand that to be can't isn't an absolute. Then you're saying she, the ALJ did discredit her testimony, but then the ALJ doesn't say that and doesn't say why either. Well, because the ALJ thought that she generally, we are in a realm where the claimant doesn't articulate any specific limitation. So it's just a general, I'm disabled. To be fair, the claimant says, may not be true. I can't get out of bed. And if you can't get out of bed, you probably don't have the residual capacity to do a job unless it's a job you can do in bed. And the ALJ at the end of the day says, you know, what you're saying isn't consistent with the medical record. And Lambert says, that's not enough. Now, you just did a great job of writing the ALJ's opinion. And maybe it's harmless error. But the ALJ doesn't say anywhere in this, in the decision, what you just said, does she? Well, we're in the realm of deciding as the, you as the court, was it a reasonable interpretation? Could an ALJ have- No, no, I'm trying, I've been trying from the beginning to separate the sufficiency of the evidence argument, the conclusion. I happen to think the conclusion is probably quite reasonable. And maybe the failure of the ALJ to explain it sufficiently doesn't really, shouldn't lead us to undo it. But I'm trying to focus on whether or not she's described it sufficiently. So where in this decision, and I've read it too many times, where in this decision does the ALJ engage in the analysis, very good analysis, you just did for 30 seconds here? I would say, Your Honor, it goes to the very unique nature of describing improvement in a mental health case, where the ALJ discussed her subjective complaints, specifically referring to her hearing testimony and her functional report and that of her husband. And then the ALJ described the ebbs and flows of her treatment and specifically cited at medication and improved that. And under Ford v. Saul, the ALJ can, we defer to the ALJ to resolve those peaks of functioning and those valleys of dysfunctioning. And I see that my time is up. So I'll let the court, does anyone- Quick question for you. Am I correct in reading this record that the ALJ found that she was capable of returning to her past employment? Yes, that is correct, Your Honor. I have to say in 21 years of hearing social security cases, is that unusual? I can't remember the last time I had a social security record where the ALJ made that finding. Usually the finding is she can't return to her past relevant work, but there still exist lower level jobs in the national economy that she's capable of producing. So is that significant here? Well, it is certainly significant that there are at least one position that is her past work she can return to, and then one position, four positions in the national economy that she can return to. And I would point out that the location watch for it said that her past work and at least two of the jobs that the ALJ identified require no public contact whatsoever. So that was really at the heart of her claims. Maybe I didn't make my question very clear. It was really a very simple question. How frequently does the ALJ, in your experience, find that a claimant is capable of returning to her past relevant work? Well, Your Honor, I actually I've done training for that for internal attorneys here, and it's not surprising that this court doesn't see it because as I describe it to them, that this happens in our easiest cases and our hardest cases. Easiest cases because if you can return to your past work, obviously there's a good chance you can do other work. Hardest cases because we often see it in very old claimants who, because they would age out, couldn't perform simple jobs in the national economy, the only way to find them not disabled is if they can do their past relevant work, work that they have experience with. So it's not surprising to me that this court doesn't see it because those cases probably don't make it up to appeal, but they are actually fairly frequent. Okay. But is that, I guess, significant? Did I just hear you say that the only way they can find them not disabled is to find they could do their past work? For when claimants are of a certain age, when they are of advanced age. Okay, but this claimant was 41, right? Yeah, so she does not fall into those age categories. So it would be, so it is unusual in your experience for this young a claimant, for the ALJ to find that her impairments are not so severe that she couldn't return to her past relevant work. No, this isn't unusual at all. Not unusual at all because we don't generally see those cases that the claim is simply denied and not appealed? Yeah, yes, that those are the ALJ's decisions. They are stronger cases factually for the administration when a claimant can return to her past relevant work, generally speaking. Just as in immigration cases, we don't see the cases with a great relief, I guess. Exactly. Okay, that was interesting. Thank you, counsel. I'm not sure how legal or not that is. Yes, thank you, counsel. All right, Mr. Appel, I'll give you a couple of minutes. Thanks. I just want to address that outstanding piece of evidence that was brought up. The judge did identify in her summary of evidence the claimant reported her depression was improving and that she was going to come off Prozac on July 8, 2016. So I did turn to that record and it is an incident where the claimant did have a normal affect. Her doctor, Dr. Plotz, advocated taking her off to Prozac, but she was also increasing her Topamax and starting her on lithium. So it wasn't necessarily evidence of improvement, but it was an instance of trying to find better medications. Now, I'm going to cite to Holan and Masanari that it is error for an ALJ to pick out a improvement of a period of months, years, and treat them as a basis for concluding a claim that is capable of working. But you do agree that that is a specifically articulated basis. It may, in your judgment, be insufficient, but isn't that a ground? I would agree that if it was couched, as required in Brown and Hunter and Lambert, and that allegation is undermined by the finding that the objective evidence is B. And that's the degree of specificity required by Lambert and Brown and Hunter in the cases dating back to Tri-Club. This is not done here. We are inferring her argument by pulling out of her summary of the evidence. Can we intuit that from the rest of the... That's the question that's difficult for me in this case. I don't know what the answer is. I can look at the ALJ's opinion and intuit from it, from her other findings, why she might have rejected your client's claim, for example, that she couldn't get out of bed. But I don't, in terms of reviewing it, I don't have the specific reason why she did that. The fact that she may have improved or not have improved may be the reason she rejected your client's subjective testimony, but it may not be. So that's what I'm struggling with in this case. That's why the case is interesting to me, I must say. And you've hit the nail on the head, Judge. There's a greater degree of specificity that is required. There's actual analysis required by Lambert and by Brown, Hunter, and Tri-Club. You have to analyze it. You have to provide the analysis. The court is not allowed to infer from the summation of the medical record. Now, I do want to point out that much of the defendant's arguments are post hoc rationalizations. He relies on the state agency doctors as a source of conflict. But in fact, the ALJ rejected those doctors. He cites insufficient evidence as a basis of the ALJ's decision. But in fact, the ALJ found that there was insufficient evidence without citing any of the obvious objective evidence that included the MOCA analysis, that included the GAF score, that included Dr. Layman's own analysis. So she ignored the objective evidence. It wasn't that there was insufficient evidence. And again, the defendant recites plaintiff's activities that she didn't pursue treatment, that she went to the mall and got her nails done. Now, the ALJ didn't bring any of those up. So I would argue that these post hoc rationalizations aren't even relevant to consideration. All right. Thank you very much, counsel. We've gone way over time. Thank you for an excellent argument, both counsel. Wade versus Saul will be submitted. And we'll take up Penn Source Investments versus Willis.
judges: Wardlaw, Tallman, Hurwitz